**FILED**

3:08 pm Jul 15 2020
Clerk U.S. District Court
Northern District of Ohio
Cleveland

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOHN D. BRENTLINGER, II                     Case No. 3:18-cv-02452-DAP

      Petitioner


-vs-                                         JUDGE: DAN AARON POLSTER


                                             MAGISTRATE JUDGE:
                                             JONATHAN D. GREENBERG

DAVID MARQUIS, Warden

      Respondent

---

OBJECTIONS TO THE MAGISTRATE'S

REPORT AND RECOMMENDATION

---

**COUNSEL FOR PETITIONER**

JOHN D. BRENTLINGER, II
P.I.N. A-724-798
Richland Correctional Inst.
1001 Olivesburg Road
P.O. Box 8107
Mansfield, Ohio 44901-8107

Petitioner pro se

**COUNSEL FOR RESPONDENT**

MAURA O'NEILL JAITE
Asststant Attorney General
150 East Gay Street, 16th Fl.
Columbus, Ohio 43215

## I.   Procedural History:

Currently before this court is a petition for writ of habeas corpus filed by John D. Brentlinger, II, herein Brentlinger, on October 17, 2018; a Return of Writ/Answer, filed on January 17, 2019 by Respondent; and a Report and Recommendation, herein ("R&R"), filed by Magistrate Jonathan D. Greenberg on May 6, 2020. Also before this Court is Brentlinger's motion to expand the record and Respondent's opposition to that motion.

## II.   Statement of Case and Facts:

The Magistrate's statement of the Ohio Appellate Court's procedural history of this case are not in dispute. In fact, because there are no State procedural issues that would foreclose habeas review, see R&R at p. 12, n.2, the only issue is the Magistrate's reasoning for denying the sole Ground for Relief presented to this Court. Brentlinger's Objections are set forth below accordingly.

## III.  Ground For Relief No. I:

In Ground for Relief I, Brentlinger argued a violation of the Confrontation Clause and Due Process under the Fifth, Sixth, and Fourteenth Amendments to the United States constitution. The origin of the claimed violations was the trial testimony of Shanda Pearson, herein "Pearson" – who was a postal worker in Tennessee and delivered mail to Brentlinger's home.

At trial, Pearson testified that Brentlinger's wife, Lynette Brentlinger, herein Mrs. Brentlinger, contacted her and asked her to intercept a package that was on its way to the Brentinger's house. (R&R at 5). See also State v. Brentlinger, 2017-Ohio-2588, at ¶14.

Brentlinger submits that the following testimony by Pearson is germane to Magistrate's R&R. Specifically, "Pearson explained to Lynette that she could not size a package without a reason." (R&R at 5). See also (Tr. p. 213).

2

Thereafter, and over objections, Pearson testified as follows:

> John Brentlinger *** was mailing a gun back to their house
> that he had used in a crime in Ohio, that he had assaulted a
> man with it and shot at the man, shot the phone the man had
> with the gun, and he had thought at the time the cops has
> the shell casings and so he was mailing the gun back to her
> to hide and she did not want any part of it. She did not
> want the gun delivered to her house be*ause she was scared
> for her and her children.

(R&R at 17) See also Tr. p. 214

The above cited testimony formed the basis of Ground for Relief I, and the State appellate court decision, as well as the Magistrate's R&R. Accordingly, Brentlinger respectfully submits the following for this Court's consideration.

**IV.  State Opinion & Magistrate's R&R:**

When addressing this claim on appeal, the Ohio Appellate Court cited Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, and the Ohio Supreme Court's decision in State v. Stahl, 111 Ohio St.3d 186, and denied Brentlinger's claim, stating in significant part; "We do not see any indication that her mind was contemplating the prospect of her statement being used in a criminal action." (R&R at 21). See also Brentlinger at ¶54.

When addressing this issue in his R&R, Magistrate Greenberg cited a number of United States Supreme Court case authorities related to the "primary purpose" test announced in Ohio v. Clark, 576 U.S. 237, 135 S.Ct. 2173, 192 L.ed.2d 306, then states that "Brentlinger fails to establish that the outcome of the objective witness test, in the context of this case, is contrary to the primary purpose test." (R&R at 24). Magistrate Greenberg than points to the similarities between the Ohio Supreme Court's "objective witness' test and Clark's "primary purpose" test, and state: "both focus upon the intent of the declarant....." (R&R at 24).

3

Magistrate Greenberg specifically cited to the State appellate court's decision and stated: "Consistent with the Supreme Court's explanation in Clark, the state appellate court focused on Pearson's identity as the person to whom Mrs. Brentlinger made the out-or-court statements and the purpose for Mrs. Brentlinger making the statements to Pearson. (R&R at 25).

Magistrate Greenberg went on to cite Pearson's trial testimony in which she described her relationship with Mrs. Brentlinger, and cited the state appellate court's reasoning in which that court stated: "Lynette Brentlinger 'did not contact the police or give a statement to law enforcement. Rather, she contacted a familiar acquaintance to help her address a specific problem'" (R&R at 26).

Thereafter, adding a confusing twist to the analysis and relying on the above state court record, as well as the decision in Clark, the Magistrate stated:

> Under the circumstances of this case, the Court cannot say that the state appellate court's decision was contrary to, or an unreasonable application of, clearly established federal law. However, even if it was contrary to, or an unreasonable application of, clearly established federal law for the state appellate court not to cite Clark and apply the "primary purpose" test, "this simply means that [Brentlinger] os entitled to de novo review" of his Confrontation Clause claim.

(R&R at 26) (internal citation omitted)

Following the above statement, the Magistrate states: "After de novo review, for the reasons set forth above, the Court concludes the portion of Pearson's testimony which may have gone beyond what was necessary to explain her subsequent actions were nontestimonial and did not violate Brentlinger's rights under the Confrontation Clause. (R&R at 26-27).

Brentlinger submits that the following Objections are related to 28 U.S.C. §2254(d)(1) and (2), and asks this Court to consider the following.

4

**V.**  Objections - §2254(d)(1):

In conducting his de novo review, Magistrate Greenberg, under the heading of "Due Process Clause," analyzed the issues under a harmless error analysis, and cited to the State Appellate Court's "other compelling evidence" in support of his determination. That determination states: "In light of the above, the Court finds that any error in the admission of Pearson's testimony that 'may have gone beyond what was absolutely necessary to explain her actions to the jury and provide a foundation for the resulting investigation,' was not so egregious so as to deny him fundamental fairness." (R&R at 28-29).

**A.**  Clearly Established Law:

In Michigan v. Bryant, 562 U.S. 344, 131 S.Ct. 1143, 179 L.Ed.2d 93, the United States Supreme Court took the opportunity to define the "primary purpose" test stating:

> An objective analysis of the circumstances of an encounter and statements and actions of the parties to it, provide the most accurate assessment of the "primary purpose of the interrogation." The circumstances in which an encounter occurs, e.g., at or near the scene of the crime, versus at a police station, during an ongoing emergency or afterwards - are clear matters of objective facts.
>
> The statements and actions of the parties must also be objectively evaluated. That is, the relevant inquire is not the particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individual's statements and actions and the circumstances in which the encounter occured.

562 U.S. at 360. (underline added). Accord Clark, 576 U.S. at 244-245.

The Bryant Court went on to explain: "Formality is not the sole touchtone of our primary purse inquiry because, although formality suggests the absence of an emergency and therefore an increased likelihood that the purpose of an interrogation is to "establish or prove past events potentially relevant to later prosecution," ***. 526 U.S. at 366. (underline added).

As applied to this case, the Magistrate, like the State Appellate Court, placed significant emphasis on the relationship between Mrs. Brentlinger and Pearson to establish that "Mrs. Brentlinger's focus appeared to be 'on resolving the issues presented by having a gun used to commit a crime shipped to her house.'" (R&R at 26).

However, when viewing the facts of this case under the primary purpose test, through the "objective" lens, as outlined in Bryant, it is clear that both Mrs. Brentlinger and Pearson intended to have the package in question seized and turned over to the proper authorities for the purpose of prosecuting Brentlinger.

Brentlinger respectfully submits that the State Appellate Court's statement of facts specifically states that:

> At trial, Shanda Pearson ("Pearson") - a postal worker in Tennessee who delivers mail to Brentlinger's house - testified that, On January 7, 2015, she was contacted by Brentlinger's wife, Lynette Brentlinger, ("Lynette"), regarding this package. Tr. 210-211, 213-214. In her testimony, Pearson stated that Lynette asked her to intercept a package that was on it way to the Brentlinger's house. Tr. 212. Pearson explained to Lynette that she could not seize a package without a reason. Tr. 213. Pearson asked, "Why do you not want this package delivered to your house?

(R&R at 5) See also State v. Brentlinger, 2017-Ohio-2588 at ¶14.

Thereafter, Pearson testified that she asked why Mrs. Brentlinger did not want the package devivered to her house. Trial counsel objected and the trial court overruled the objection and allowed the testimony outlined on pages 6 and 17 of the R&R to be presented to the jury.

In reviewing the facts, Brentlinger submits that the allegations of a crime that Mrs. Brentlinger told Pearson about, were detailed and specific and shows a clear intent to (1) seize the package, and (2) alert the authorities to the allegation that the package contained evidence of a crime in Ohio.

**1.**  Objective Evaluation:

When looking at the above facts objectively, two facts become clear. One, Mrs Brentlinger did not want the package in question to be delivered to her house. Two, Mrs. Brentlinger sought the advice of Postal Worker Pearson. What is not clear, is how the issue of not delivering the package to the Brentlinger's house became an issue of seizing that package. In its simplest form, Mrs. Brentlinger has a number of options available to her to not receive the package in question. At the top of the list is simply REFUSE THE PACKAGE! Secondly, Mrs. Brentlinger could have simple asked Pearson to stamp the package RETURN TO SENDER. Aside from the simple way of handling this situation, Mrs. Brentlinger could have explained to Postal Worker Pearson that the package contained firearm components and she did not want them at her house with the children. FN1

When viewed in the light of Mrs. Brentlinger's options, and the actions she took, those actions strongly indicated that Mrs. Brentlinger fully intended to have the firearm components seized and turned over to the authorities in Ohio.

In light of the fact that Brentlinger maintained numerous firearms at his home, and Mrs. Brentlinger was fully aware of Brentlinger's business of buying and selling firearms, Mrs. Brentlinger's primary purpose for stating to Pearson that the gun was used in a crime becomes clear.

---

n.1 - It must be noted at this point that there were actually two packages sent by Mr. Brentlinger and each contained various components of the same firearm. The firearm was disassembled and placed into two different packages to avoid breaking any laws related to mailing firearms through the United States Postal Service.

**VI.** <u>Objections - §2254(d)(2):</u>

In light of the above, the next question that must be addressed is what motive Mrs. Brentlinger's may have had for alerting the authorities about her husbands alleged criminal activities in Ohio. To be clear, accordingly to Pearson Mrs. Brentlinger was told by her husband that he committed a crime in Ohio, and again, according to Pearson her husband gave specific details like (1) he assaulted a man with the gun; (2) shot at the man; (3) shot the phone the man had;(4) and thought the cops has shell casings. See (R&R at 17) and Tr.p 214.

Aside from the fact that, in giving that testimony Pearson actually told the jury that Mr. Brentlinger confessed his alleged crime to his wife, Pearson gave details of, what was at that time only an allegation - details that could have only come from one or two sources - Mr. Brentlinger or the people in Ohio connected to that alleged crime.

Accordingly, when considered "objectively" not only does the State Appellate Court decision run afoul of §2254(d)(1)'s unreasonable Application of Law, but it also runs afoul of §2254(d)(2)'s unreasonable determination of facts. Moreover, the only way to determine Mrs. Brentlinger's motive for having reached out to someone to "intercept" or "seize" the package her husband sent, would have been to put Mrs. Brentlinger on the witness stand and confront her about the actions she took and why she wanted the package "intercepted" as opposed to simply telling her husband either not to send it, or refusing delivery - an option never mentioned by Pearson.

To sum up this situation, the question here turns on whether Pearson's recitation of what Mrs. brentlinger told her is testimonial, which, according to the Magistrate and case authority, turns on whether Mrs. Brentlinger intended to make those statements for the purpose of establishing those facts at a later date.

However, in accordance with the current case authority on the subject, because Mrs. Brentlinger did not testify, this Court must review the totality of the circumstances and attempt to determine the thoughts of someone that never testified and was never subjected to cross examination.

With that in mind, Brentlinger would ask this Court to consider that, when Mrs. Brentlinger contacted Pearson there was no crime committed with respect to the firearm being mailed to Mrs. Brentlinger. As stated above, the firearm was disassembled, and sent to two different packages. Thus, there would be no legal reason for the Postal Inspector to "intercept" or "seize" either of those packages. Pearson could however, has mentioned above, simply told Mrs. Brentlinger to refuse delivery, and advised her of whatever procedures were required for that remedy.

Brentlinger would also ask this Court to remain mindful that, prior to intercepting the packages in question, any information given to Pearson from Mrs. Brentlinger, was hearsay. Accordingly, absent the additional hearsay – that the firearm components contained in the packages were used in a crime in Ohio, those packages could not, and indeed would not have been "intercepted" or "seized" for the purpose of investigating the allegation that the weapon was related to criminal activity in Ohio.

To that poing, the Magistrate placed emphasis of the State Appellate Court assertion that; "Lynette Brentlinger did not contact the police or give a statement to law enforcement. Rather, she contacted a familiar acquaintance to help address a specific problem." (R&R at 26).

The State Appellate Court, based on pure speculation, when on to hold that, Mrs. Brentlinger's focus appeared to be on resolving the issue presented by having a gun used to commit a crime shipped to her house." (R&R at 26).

In hindsight, contacting Pearson was the same as contacting the police. It obviously had the same affect. Moreover, Mrs. Brentlinger did not testify, and at the time she contacted Pearson, the only person claiming the firearm components were related to criminal activity was Mrs. Brentlinger. Thus, and, contrary to the Magistrate's assertion, Pearson's mandatory obligation, an obligation that had the same affect as reporting the situation to the police, may very well have been the reason Pearson was contacted.

Under the specific facts of this case, absent the ability to cross-examine Mrs. Brentlinger, the State was able to use Pearson's testimony to validate their allegations against Brentlinger. More importantly, rather than reviewing these same facts objectively, the Magistrate also validated Mrs. Brentlinger's actions as an attempt to "resolve the issue presented by having a gun used to commit a crime shipped to her house." (R&R at 26).

As a result, and in the absence of the ability to cross-examine Mrs. Brentlinger, the reasoning of the Magistrate, like the State Appellate Court, is based on pure speculation and nothing more.

Because there is nothing in the State Appellate Court's analysis, nor the Magistrate's R&R, that suggests the above facts were reviewed "objectively" as case authority requires, Brentlinger respectfully submits that the R&R is based on an unreasonable determination of the facts in light of the evidence presented to the State courts and to the Magistrate.

**VII.** Motion to Expand the Record:

Lastly, the Magistrate addressed Brentlinger's Motion to Expand the Record. Brentlinger sought to include a sworn letter that was sent to the Innocence project from former Allen County Sheriff Daniel Beck.

As the Magistrate acknowledged, the sworn letter indicated that three main people involved with Brentlinger's case, Sheriff Sam Crish; Lt. Mark Baker, and Joseph Croft, the alleged victim, were closely and personally connected. See (R&R at 29-30). Following an explanation of why the Motion to Expand the record was denied, the Magistrate stated:

> Brentlinger asserts in his reply, "To be clear, Brentlinger's entire argument before this Court is based on the potential connection between the disgraced former Sheriff, Sam Crish, the lead investigator, Lt. Mark Baker, and the alleged victim, Joey Croft."
>
> But this statement is belied by his Petition and Traverse, which focus solely on admission of statements by Lynette Brentlinger as relayed through Pearson's testimony, not other evidence or the integrity of the investigation that lead to his conviction.

(R&R at 34)

As Brentlinger argued above, Mrs. Brentlinger's motive for contacting Pearson and providing the allegations leading to Pearson's testimony, is nothing more than speculation without the ability to question Mrs. Brentlinger on that subject. What is known from the facts of this case, however, is that two people stood to benefit from Brentlinger's conviction – Mrs. Brentlinger and Joseph Croft. And, that firearm was a key component to both.

With respect to facts contained in the trial court records, Joseph Croft was in debt to Mr. Brentlinger to the sum of $50.000.00. Moreover, the disgraced former Sheriff, Sam Crish was himself imprisoned for various forms of corruption, some of which included case fixing and extortion.

That stated, the ability to cross-examine Mrs. Brentlinger about her connections to the only other people in Ohio that claimed Mr. Brentlinger shot Joseph Croft's phone, a claim Mr. Brentlinger testified did not happen, would have played a significant role in Mr. Brentlinger's defense.

Thus, the connection between the three individuals mentioned in the Motion to Expand the Record is significant to the issues currently before this Court. Moreover, contrary to the Magistrate's assertion, Brentlinger did point to highly questionable tactics related to the investigation by Lt. Mark Baker, in regards to the shell casings; Baker's purchase of additional firearm components; and the test firing of the weapon he assembled.

In sum Brentlinger respectfully submits that Mrs. Brentlinger could have numerous reasons for not wanting to call the police department. If in fact her husband gave her details of an alleged crime, she logically would have been aware that exposing that information to anyone would potentially result in her husband being charged. To that point, it is equally difficult to believe that Pearson informed her superiors about the conversation she had with Mrs. Brentlinger, and the police did not obtain a statement from her.

Thus, the only way to answer the questions raised herein, without continuing to speculate on the matter, is to question those involved.

### CONCLUSION

For all of the reasons stated herein, Brentlinger respectfully Objects to the Magistrate's Report and Recommendation and asks this Court to Order an evidentiary hearing on the matter and get the answers that the State has tactfully avoided in this case, and any other relief this Court deems appropriate under the circumstances presented in this case.

Respectfully submitted,

John D. Brentlinger, II
P.I.N. A-724-798
Richland Correctional Inst.
1001 Olivesburg Road
P.O. Box 8107
Mansfield, Ohio 44901-8107

12

## CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing, Objections to the Magistrate's Report and Recommendation, has been sent, via regular U.S. mail, to Counsel for Respondent, Maura O'Neill Jaite, Assistant Attorney General, at 150 East Gay Street, 16th Floor, Columbus, Ohio, 43215, on this 9th day of July, 2020.

By: _____

John D. Brentlinger, II
P.I.N. A-724-798
Richland Correctional Inst.
1001 Olivesburg Road
P.O. Box 8107
Mansfield, Ohio 44901-8107

Petitioner pro se

I, John D. Brentlinger, II, do hereby affirm, under penalty of perjury, that on this 9th day of July, 2020, I placed the instant Objections, in the prison mailing system and mailed them to:

The Office of the Clerk
United States District Court
Northern District of Ohio (E.D.)
810 West Superior Avenue
Cleveland, Ohio 44113

July 9, 2020
_____
Date Signed

By: _____
John D. Brentlinger, II